Mr. Adams, please proceed. Good morning, and may it please the Court, John Adams on behalf of the United States. The Court of Federal Claims in this case committed reversible error when it granted judgment to plaintiffs on takings claims for two segments of an Indiana railroad corridor at issue in this appeal. The first segment concerns the Manship Decree. In summary, Manship is an Indiana trial court decision from 1907 that both quieted title to the same piece of property at issue in this appeal and expressly held that the railroad had fee simple title to the land. This would settle the matter for the first segment. In holding that the railroad instead obtained a prescriptive easement, the Court of Federal Claims misapplied the Manship Decree and in so doing stumbled into a full faith in credit error. Thus, as to the- What really happened here, the Court of Federal Claims read the Manship Decree differently than you read it. It read it as finding that the railroad had a fee simple only in an easement and not in  Isn't that how the Court of Federal Claims interpreted and gave full faith and credit to that interpretation of what the Manship Decree was doing? I don't think so, Your Honor. Let me read from what the Court of Federal Claims found. The Court of Federal Claims itself acknowledged that the Manship, quote, concluded as a matter of law that the railroad company obtained fee simple title, end quote, and that's at Appendix 17. And then what the Court of Federal Claims did afterwards, it took a look at a different case involving different parties, different facts- I don't know if that's quite fair. Didn't the Court of Federal Claims say, we read the Manship Decree as finding a fee simple in an easement or in a right of way, I think was the actual language. It did ultimately hold that. I don't think that's how the Court of Federal Claims interpreted Manship. What the Court of Federal Claims did was once it determined that there was fee simple title, and that's from Appendix 17, it took a look at a different Indiana Court of Appeals decision and that's the Meyer case. But to just be a little more clear on the claims court decision, what it quoted from Manship wasn't just the fee simple language, but that line in the Manship opinion goes on to say, to wit, it's right of way. And so there was a connection between the term fee simple and the term right of way. And I think the claims court then looked at that and then looked at what happened in Meyer and, of course, our case Barlow, you know, when we're trying to give a best reading. I mean, that's all we can do and that's all the claims court can do. This is impossible to read opinion and now we're just trying to divine the best meaning from certain key excerpts. And the fact here is, at least this portion of the Manship Decree connected fee simple with right of way, did it not? It did, Your Honor. And plaintiff's argument is that right of way here means easement. Importantly, the Manship decision itself never mentioned easement. What it did was it took a look at adverse possession factors and then determined that the railroad likely had a prescriptive easement. Why did the Manship Decree go through all the adverse possession, you know, considerations? I think that the Manship Decree, the judge was just taking a look at that to determine if the Mr. Manship or the railroad had fee simple title and it did. Let me emphasize one point. I guess that's the question. Why would the judge have gone through the adverse possession factors if it concluded, as you would say, that the railroad had a fee simple title? Well, it did determine that the railroad had fee simple title. It may have been the case.  I know that. But, I mean, then you don't go through the adverse possession factors is my point. You're right, Your Honor. I don't dispute, the United States doesn't dispute that the Manship Court did go through those factors. Isn't that an important, useful clue for us to understand the context of what the judge and Manship was trying to get at? I think it could be, but let me emphasize one point, Your Honor. Even if the Manship Court went through the adverse possession factors and determined that the railroad had fee simple title, which is the United States position, and as plaintiffs contend that that was an erroneous decision, that erroneous decision, even if that's true and even if that's the court's opinion, it was never appealed at the time and it remains valid and binding on the parties and their privities, and plaintiffs are in privity with Mr. Manship. They are the predecessors in interest to the property at interest in this case for the first segment. But isn't it fair to say the Court of Federal Claims did not interpret the Manship degree that way? I disagree, Your Honor. The United States position is that the Court of Federal Claims did find that the Manship degree found, and I'll quote, fee simple title, and that's Appendix 17. But I do agree that what the Court of Federal Claims did was then take another step and took a look at the Meyer decision from the Indiana Court of Appeals and said the Meyer decision is close to what happened in Manship, and therefore I'm going to determine that as a matter of law that the Manship decision actually found an easement. And that's plaintiff's position, but that's not the United States position, because as we state in our papers, even if that judgment was erroneous, an erroneous judgment not appealed remains valid and binding on the parties. Can you show me where on 817 you're talking about where the claims court judge concluded that in Manship that there was a grant of fee simple? Yes, and just to be clear, Your Honor, Appendix 17, so that would be page 12 of the opinion. Let me read. It's right there in the middle of the page. In both cases, the trial court made findings of fact supporting a conclusion of adverse possession and concluded as a matter of law that the railroad company obtained fee simple title as a result of such adverse possession, end quote. Fee simple title as a result of such adverse possession, that, I'm sorry, maybe I'm confused. I thought that the Court of Federal Claims also acknowledged that the fee simple title could be fee simple to an easement. That's what it determined after applying the Meyer decision from the Indiana Court of Appeals, which we contend was wrong to do. An easement is what the railroad would get after as a result of adverse possession. That's not what the Meyer decision, our position, Your Honor, is that the Meyer decision determined that it was fee simple title. I guess Meyer, which is an Indiana appellate court case, said that you can get a fee in an easement, right? That is right, Your Honor, but so I guess that's what the claims court judge was trying to do here, was trying to interpret what happened in Meyer. Meyer used language that admittedly to someone like me is confusing, fee simple in an easement or fee simple as a result of adverse possession, but necessarily in Meyer, what happened in Meyer was a conclusion that that was an easement that occurred in Meyer. And so the claims court was simply following suit here with this fee simple language to wit of right of way. Your Honor, as we explained in our reply brief at page nine, right of way under our interpretation means the strip of land upon which a railroad is constructed, and we cite an Indiana Court of Appeals decision from 2000, so there is ambiguity. And I'd also note to this court that in the ATS Ford case that we flagged in our 28J letter just last week, this court was looking at language such as the right of way in the charter that gave the railroad the original ability to construct the rail, and this court itself concluded that it doesn't mean that it's a prescriptive easement. In fact, this court said that meant fee simple title to the land. Is the question of what the manship decree actually means, is that a question of law that we decide de novo? No, Your Honor, it is not. It is the United States' position that this court has no ability, just as the Court of Federal Claims had no ability to disturb the holding of manship because it is a decision that was never appealed. Okay, I'll concede we can't disturb the holding, but there's dispute as to what the holding was. Do we figure that out for ourselves de novo, or do we defer in some way to the Court of Federal Claims? I don't think we just defer to the United States. No, there's no deference to the Court of Federal Claims here. It is de novo review. So we figure out for ourselves what the manship decree means. Yes, you're right, Your Honor. And if this court concludes, as United States reasons, that it does mean fee simple title, then even if the court concludes that it was erroneous, decided an erroneous judgment not appealed remains valid and binding on the parties. And I know I'm getting close to my rebuttal time, and there are two segments at issue in this appeal. And Judge Chen, you had mentioned earlier the Barlow decision. Just to be clear, the Barlow decision applies to the second segment of the land at issue, and that is governed by the Van Laningham instrument. And the United States position is that the Court of Federal Claims misapplied Barlow for a very simple reason. Barlow applied Illinois law, and this case involves Indiana law. And the distinction between Illinois law and Indiana law is outcome determinative in this case. And this goes to the lost deeds doctrine. Under Indiana's lost deeds doctrine, if a deed is lost, and importantly, plaintiffs have not produced any evidence that the deed here is lost for the second segment, but if a deed is lost under Indiana law, that allows the plaintiffs to produce secondary evidence to prove the contents of the deed. In Illinois, by contrast, and this is the Barlow decision, if a deed is lost, then that means the deed is void, and the centerline presumption comes in to fill the gap. And so that's the distinction here. And in this case, plaintiffs have not established that the deed is lost because they have not produced evidence, nor have they looked at the place. I mean, the deed's either lost or it doesn't exist. It's one or the other. So which would you rather it be? Well, Your Honor, it is... If that were your choice. Well, it's undisputed that a written conveyance exists for the second segment, and that's at Appendix 23. No, it's undisputed that there's mention in the ICC tables and maps that whatever written thing may have existed is non-existent, right? I mean, that's what's, let's see, ICC valuation maps expressly say, no more deed, right? I'm sorry, Your Honor? Don't the ICC valuation maps expressly say there is no deed? Your Honor, the valuation maps say that the deed was lost, but then it goes on to say, and this is at Appendix 21, it was, there's mention of the Van Laningham instrument made in the complaint, and that's end quote. And so the question for this court is... So here's how I see the question. The question as I see it is, there is no deed in this case. So what should the default rule be in a case with no deed? Now, you're absolutely right that Illinois and Indiana are not the same because one of them says what should happen when there's no deed, the other says nothing, it's silent. So we have to divine what the legislature would think or a court in that state would think. Would it surprise you to know that I made my clerk, which is why I just made him bring me to a survey of every state in the country to find out what happens in this situation. Do you know that they pretty much all, everyone that has a law has the same law as the Barkley case? It's meaning, it's the case that if a deed is lost, the default is the same default that we recognized in that case as applies under Illinois law. So why would we not use that same rule here where this state is silent and doesn't have a particular law that tells us which way to go, when all the other states do have a law, they're consistent. They go in that same direction as the case we've already decided. Why would we not do that? Chief Judge, I would refer the court to Indiana Code Section 32231110A, which states that the centerline presumption does not apply when a deed does not exist. And here in this case, it's undisputed. The centerline presumption does not apply when a deed does not exist? Under Indiana, let me take a step back. The centerline presumption, what it does is it allows, it's a gap-filling function. The centerline presumption presumes that landowners adjacent to a railroad own the adjacent land up to the center of the road, up to the center of the road. We understand that part. The part I don't understand is when a deed doesn't exist to the contested property, why wouldn't the centerline presumption exist? Well, under Indiana's lost deeds doctrine, there, in contrast- Not under the lost deeds doctrine. In general, if there is no deed. If there's no deed, are you telling me the statute says if there's no deed, the centerline presumption doesn't exist? Correct. Which statute is that? Indiana Code Section 32231110A. Can you read it to us, Dan? I think you just had an extra not in there. I do, Your Honor. I would have to pull it up. I can do that. Just give me one moment. For instance, on page 27 of your blue brief, you said, Indiana's centerline presumption is premised on the nonexistence of a deed, so the centerline presumption cannot apply where a deed exists, but it's lost. Isn't that your position? Yes, Your Honor. I may have misstated earlier. When a deed exists, as in this case, the centerline presumption does not apply. I think I was-  No, I think I understand.  I was doing a double negative. I think it was too many negatives. Yes. When their deed exists, as here, as it's undisputed- And the next question is, there's really two separate questions here. One is the burden allocation question, which is what happens when there is a lost deed and the plaintiffs here made a bona fide attempt to find it and couldn't find it, or there was a bona fide attempt made and it could not be found, then who has the burden to come forward with secondary evidence? That's a very important- And then, assuming that party does not meet its burden with secondary evidence as to what were the contents of the lost deed, then the next question is, okay, now we have a deed that is lost, how do we figure out what to do with the contested piece of property? And you're saying when a deed does not exist, then the centerline presumption applies, right? That's correct, yes. Now we agree on that. Yes. Okay. And then, as a practical matter, when we have a lost deed, why wouldn't that be treated the same way as if a deed had not existed ever? Let me just emphasize one point in your Honor's question, which is plaintiffs alone bear the burden. Okay. That's the burden allocation piece.  That, we can get to that if we have time, but this other part, just the final part, why wouldn't we, under Indiana state law, apply the centerline presumption to a lost deed situation just as Indiana does, quite clearly, for a no-deed situation? You mean Illinois law? Are we in Indiana or Illinois? I thought you were referencing the Barlow decision. No, I'm talking about your case, Indiana. Understood. So, under the lost deeds doctrine, it's a two-step analysis. First, you determine if the deed's lost, and we contend that— No, I'm— So, assuming that's true— We're just at the very end step. Yep. So, then, if a deed is determined that it's lost, what that does is permit—and this is what distinguishes this case from Barlow—it permits plaintiffs to provide secondary evidence for the contents of that deed. I know all that part, too. Now— And then, if you get there and there's nothing, then plaintiffs have not satisfied their burden, and they cannot claim compensation for that deed. Why does the centerline presumption—you agree the centerline presumption applies when a deed does not exist, correct? Correct. Why does it not apply when a deed is lost? It's Indiana law, Your Honor. Where? You don't cite any Indiana law. Because you have to get to the step that you can provide secondary evidence for—if the deed's lost, you can provide secondary evidence to prove the contents of the deed. It seems like your answer to the question that Judge Stark and I have is really premised on the burden allocation thing, and so I know you're way over your time. Yes. It appears that the claims court concluded—and I think Barlow also did this for purposes of Illinois law—concluded that when the party that's seeking the benefit of the deed as conveying a fee simple title to the railroad, then that's the party that wants that benefit should prove that it was in fact a fee simple title conveyance. And so the question is, what's wrong with that? If it's good enough for Barlow in Illinois, why is it all of a sudden very, very wrong to do on the other side of the border in Indiana? Your Honor, I, quite frankly, am not familiar with that portion of Barlow, which I'll reference right before rebuttal. But what I will say is that this court's decision in Cassatus and Klamath, cited at Appendix 10, clearly established that it is the plaintiff's burden alone to prove that they own the property for which they're seeking compensation under the Fifth Amendment, which is that case. There's nothing distinct about a rails-to-trails case in terms of burden for a takings claim. I have to go back to the state survey that my clerk did. I know your time's up. But in all the states that we found that addressed this, let me tell you, like in Texas, if the deed's even ambiguous, the default is just a prescriptive easement. In every state that has a law about a lost deed or an ambiguous deed, it's always the default rule that the prescriptive easement is what the railroad got. So why shouldn't that . . . I just don't understand why that shouldn't apply here. It feels like we would be making Illinois break stride with how every other state handles this when Illinois has just been silent about it. Your Honor, I can't . . . You're in the wrong state again. Yeah, sorry. No, I understand. I'm not familiar with Texas's law, but it is the plaintiff's burden, and there's just no evidence in this record. So even if this court doesn't want to make a general rule about the centerline presumption and what other states are doing, what this court could do is take a look at this record and determine that plaintiffs have not satisfied their burden by providing any evidence that, one, this is for the second segment now, that the deed is lost, or two, that any secondary evidence was provided to prove the contents of those . . . All right. Let's hear from the other side. Mr. Smith. Michael Smith for . . . as a counsel for plaintiffs. Your Honor, with respect to lost deed areas, the critical point is that there has been no deed to the railroad produced which vests the railroad corridor in fee simple. Indiana's common law centerline presumption is that the conveyance of land bounded by a highway carries with it the fee simple to the highway. Indiana's presumption statute provides that the fee to the center of the highway vests in the adjacent landowner filing abandonment provided that the railroad does not own the fee. If a deed transferring the fee to the railroad right-of-way does not exist, what this means is that Indiana's centerline presumption arises as a matter of course due to the landowner's ownership of the adjacent land. There is no requirement in Indiana . . . But is there an Indiana law that tells us what we do when the deed is lost versus when the deed never existed in the first place? Well, it's a question of presumptions, Your Honor. So the presumption is . . . I know that, but I'm trying to understand what is the law of what to do in Indiana when the deed is lost. And that's a different fact pattern. It's somewhat similar, but it's different than if there never was a deed in the first place. We know what the law is when a deed never existed in the first place, but it's less than clear to me what does Indiana do when there was a deed. We know there was some kind of conveyance, but the contents of the deed are unknown. Right. So the situation there is that the presumption would still be unrebutted because you still need to . . . But where's the Indiana law that says we still run with the centerline presumption in the scenario that we're talking about today? It says you never get to that point because the party who's alleging ownership of the fee symbol has not provided any evidence that gives it ownership of the fee symbol. And it doesn't matter if it doesn't exist, is lost, is just not found, if they just don't bother coming forth with the evidence, there's no affirmative requirement in Indiana that any deed exists whatsoever or that it's ever been lost. All that's required is for the landowner to establish its ownership of the adjacent land, and that's all that happens. Before we ever get to that point, you have a burden of proof. You're the plaintiff. Yes. You have to prove that the railroad only had an easement and therefore never got a fee symbol to the land. So that's your burden. And so the question that the United States is raising is why was it appropriate for the claims court to say, okay, the deed has been lost. Now we're going to stick the burden on the government, not the plaintiff, to prove the content of the lost deed through secondary evidence. One theory, a logical theory, would be it's the plaintiff's burden from beginning to end. And so if there's a lost deed, that's a very unfortunate circumstance. But the plaintiff must carry the water and do its best job of proving what the contents of the deed are. And if not, then maybe the plaintiff hasn't met its burden of proof that all the railroad ever got was an easement. Right. So we have the Indiana law, and then we have the pre-SOTA requirement that you just mentioned you have to prove the railroad owns an easement. Well, how do you do that when you have no way of obtaining the deed whatsoever? You identify the evidence that plaintiffs have, which is to establish that there's no other basis for the railroad's ownership besides adverse possession. You look at the evaluation schedules. They report no deed is lost. Okay, then you take the next step. Well, maybe they've been uncovered at some point in time. What do we do? We send out five subpoenas. You're saying it's an impossible task for the plaintiffs, but it's equally an impossible task for the government if they're the ones stuck with the burden. That doesn't answer the question of who is the right party to assign the burden to just because it's a hard burden to meet. Well, I think at that point in time, you have to fall back on what Judge Moore was talking about with respect to presumptions. With respect to, you know, what's the public policy at play here in Indiana? What's the public policy at play here in Texas? Why would we go to presumptions in public policy? Hold on. Ordinarily, if somebody has a burden of proof and they don't meet it, they lose. If this railroad right-of-way in Indiana disappears, okay, that's the facts, right? So the railroad right-of-way is abandoned in Indiana. What happens to that land? What happens to the land is it goes back to the possession of adjacent landowners. That's the presumption, okay? That's what happened here. The railroad sold its rights for a recreational trail. I bring up the public policy because as a way to illustrate that what Indiana is saying here is we don't want these vacant strips of land to be unused. We don't want to have landowners marshal proof of the existence of what might have been in the existence of a deed that doesn't exist anymore. No, what we're going to say is that landowners should be able to reclaim this land, make it their own, and that's the end of it. And if there's somebody who says they have that fee ownership, like the railroad, or somebody else for that matter, maybe another landowner might have retained the fee. Who knows? But at the end of the day, it's the public policy, which is why we have these streamlined presumptions all over the country. On the burden, the burden under the lost deed doctrine in Indiana, what the Court of Federal Claims did is a little confusing to me. It said there's, I think, two burdens, that you as the plaintiff had the burden to prove that the deed actually is lost, but then the burden shifted to the government to prove the contents of that lost deed. Is that what the Court of Federal Claims did? That's exactly right. And what part of Indiana law says that there's a shifting burden? Well, there's not because the CFC, and we don't disagree that this was the wrong thing to do. The CFC had to come up with something. The whole lost deed plus burden approving the contents of it, that arises in a completely different context where the proponent of the lost deed first has to prove it's lost and then admit secondary evidence to prove its contents. So, you know, the CFC gave the plaintiff the burden to find the lost deed, although if this was a true lost deed plus prove up the contents of its situation in Indiana, what would happen is that the person who wants to say, yes, we want to apply this deed, they have to prove it's lost, and then they have to prove the contents. So it's, I don't object. What was the, right, what was the, did you advocate at the Court of Federal Claims that both of those burdens should be on the government in this case? Yes. Before the CFC, we point to the Indiana centerline presumption and said there has never been a fee deed produced that rebuts the presumption. And that's exactly how Barlow ended up ruling because the Barlow ruling says that the centerline presumption has, the plaintiffs have proven that the centerline presumption has not been rebutted, so it's in place. Their fee simple ownership to the right of way is in place. The only way that can be disturbed is if the United States carries its burden for summary judgment and comes up with evidence to the contrary. And the United States didn't come up with any of it. I'm interested in remembering Barlow as this court endorsing for Illinois law purposes, shifting the burden to the government to prove that the lost deed there was a conveyance of a fee simple title. Yes, the Barlow court did put that on the United States. Yes, Your Honor. The government is saying, well, Illinois law is different from Indiana law here on that question. We shouldn't try to do the same thing in Barlow here. Well, I don't see how that's a distinction with the difference, Your Honor, because the result is the same. The result is that there's been no proof for the contents of the lost deed or the conveyance itself. At the end of the day, in Barlow, the Federal Circuit said, well, there's no deed. Isn't it clear under Illinois law that a lost deed is void? Yes, but I don't see how that's a difference. Hold on. Let me get the question out. Indiana law, it's not the same, right? A lost deed is not necessarily void under Indiana law? Well, you just say that you haven't proven that you have title to the land. I mean, in Illinois, they say it's void and you don't have title to the land. Okay, but it does seem like a distinction to me. And wouldn't it be a material distinction? The lost deed could potentially show up and maybe Indiana treats that differently than Illinois does. No, Your Honor, I don't think so. I mean, if you're going to – because it's a quiet title fight, right? And if you're going to say that your ownership is based on a deed, you've got to produce the deed. You have to prove ownership in some fashion. And with respect to this railroad, all they can do is say that we've satisfied the elements of adverse possession. That's effectively what plaintiff's evidence is, is that there's no evidence in the record that the railroad's title could arise from anything else besides adverse possession. I think, Your Honor, if this – I think the Varlow case and this case are really on all fours, and I think this panel should certainly follow the guidance of that panel's decision. I'll give you one more on this segment. At page 33 of the blue brief, the government writes that if a deed once existed but is lost, there can be no prescriptive easement because there was no adverse use and because there were, in fact, written conveyances. Isn't the government right about that? No, Your Honor, because the – there still has to be – the adverse possession arises when there's no color of title. But they're saying there was a deed. It's just missing. Well, they have to go find it. And so since it was missing – but since it existed, there can't be prescriptive easement because they – the railroad got title by a written conveyance. We just don't have it. Well, then that completely thwarts the entire concept of adverse possession, I think, because even if the railroad – even if the document – even if there was color of title, so there's a document but it's invalid, adverse possession – the law of adverse possession would still apply. That's how the rights are acquired by the railroad, albeit that it's limited to an easement. So I think Indian Land Law does address that. Whether it's no color of title or simply color of title, the railroad can only own what's – the rights it gets by adversely possessing land. Going back to the Manship Decree, really quick, the CFC – well, the United States said the CFC declined to file the Manship Decree. It did not. It absolutely followed it. The CFC applied the law at the time of the Manship Decree, which was that the railroad only gains a prescriptive easement in those areas. The Manship Decree certainly only said that the railroad gets a fee simple in the easement. The railroad is the owner in fee simple to the following described real estate in Hamline County, Indiana. It's right-of-way. Right-of-way in this context means easement. We have numerous cases that we've identified that all state that right-of-way means easement. This is a clear statement by the Manship Decree Court that the railroad only owns a fee simple in its easement. And, Your Honor, just to make one more point about that, we know that the Manship Decree Court was right because the fee simple in land is never litigated in that decision. There's no decision. There's no finding of the facts concerning what should happen to the railroad after it is abandoned. Nothing of that nature. And, you know, with that, Your Honor, I think I'll conclude. I think it was pretty clear here that the United States took plaintiff's property and the plaintiff's just compensation for taking. Thank you. All right. Mr. Adams, we'll restore two minutes of rebuttal time. Thank you, Chief Judge. Just a few points. Judge Stark, the best I have for Section 32231110A is on our reply brief, page 11, where we say, but the centerline presumption applies only when the railroad does not own the right-of-fee in a deed to the right-of-way does not exist. I don't have the full statute in front of me, but that's what we quote in the reply. I just want to distinguish. I'm going to ask you something. I kind of hate to blindside you with this because I just realized it's not cited in any of the briefs, but it's one of the many cases because I was trying to figure out what the default should be. When there's this lost deed and when Indiana does not have this rule and you've got the switching burdens, but there's an Indiana court, Brown versus Penn Central, and here's a direct quote from it. A deed that conveys a right generally conveys only an easement. This is in the railroad contents. The general rule is the conveyance to a railroad of a strip, piece, or parcel of land without additional language as to the use or purpose to which the land is to be put or an otherwise limited is to be construed as passing an estate in fee but referenced to a right of way if conveyed in such conveyance leads to the construction of the conveyance as an easement. I don't know. I just feel like all of the stars are aligning. Maybe I can't really divine what an Indiana state court judge would do, but I kind of feel like with all these cases, the other state laws, they would say under these circumstances, we just have to presume it was a prescriptive easement. Your Honor, I'll just distinguish one thing. We distinguish the plaintiff's cases in our reply brief this way. When you're reading a written instrument, as you did, I think that probably case involves a written instrument and right of ways in there. There are courts that say, yes, that is a prescriptive easement and that is an easement. But in this case, we have a court judgment, the Manship Court judgment from 1907 that held otherwise. Had the word right of way in it. Understood, Your Honor. But the conclusion being the holding that the Manship Court found is even interpreted by the Court of Federal Claims saying that it was fee simple title. And that just goes back to the point earlier that the government made about even if the court thinks that was erroneously decided, the court's in no position to reverse state trial court. And I see my point. I just ask this court to reemphasize that it's plaintiff's burden in a takings case to prove that they own the land and to reverse the judgment below and instruct the court to enter judgment in favor of the United States. Thank you. I thank both counsel. This case is taken under submission.